**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

NORBERTO JAVIER FELIX-TORRES,

                                        Plaintiff,

              v.                                              No. 06-CV-1090
                                                                    (GTS/DRH)

HAROLD GRAHAM, Superintendent,
Auburn Correctional Facility; JOSEPH
BELLNIER, Superintendent of Security,
Auburn Correctional Facility; DAWSON
BROWN, Deputy of Administration, Auburn
Correctional Facility; and NANCY
RYERSON, Nurse Administrator, Auburn
Correctional Faciliy ;
                                        Defendants.
_____

**APPEARANCES:**                         **OF COUNSEL:**

NORBERTO JAVIER FELIX-TORRES
Plaintiff Pro Se
99-B-0971
Franklin Correctional Facility
Post Office Box 10
Malone, New York 12953

HON. ANDREW M. CUOMO             KRISTA A. ROCK, ESQ.
Attorney General for the                 Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER[1]**

      Plaintiff pro se Norberto Javier Felix-Torres ("Felix-Torres"), an inmate in the custody of

_____

      [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

the New York State Department of Correctional Services ("DOCS"), brings this action

pursuant to 42 U.S.C. § 1983 alleging that defendants, four DOCS employees, violated his

constitutional rights under the Eighth and Fourteenth Amendments.[2]  Compl. (Docket No.

1).  Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ.

P. 56.  Docket No. 45, 51.  Felix-Torres opposes the motion.  Docket No. 48.  For the

following reasons, it is recommended that defendants' motion be granted in part and denied

in part.


## I. Background

The facts are related herein in the light most favorable to Felix-Torres as the non-moving

party.  See subsection II(A) infra.

Felix-Torres suffered from multiple serious medical conditions including Type I diabetes

for which he was insulin-dependant and prone to hypoglycemic seizures.  Felix-Torres

Affirm. (Docket No. 43-8) ¶¶ 5-9; Felix-Torres Dep. (Docket No. 45-14)  at 9 [hereinafter

"Dep."].  These  seizures increased the danger of falling when assigned to an upper bunk.

Felix-Torres Affirm. ¶ 14.  When Felix-Torres arrived at Auburn Correctional Facility on

November 1, 2005, he advised the medical staff of his diabetes and other medical

conditions and of his need for assignment to a lower bunk.  Id.[3]  Felix-Torres underwent a

---

[2] In a prior motion to dismiss, Felix-Torres' Fourteenth Amendment claims were dismissed.  Docket No. 19.

[3]   DOCS policy permitted assignment to a single cell for medical reasons or, if assigned to a double cell, occupy only the lower bunk.  Bellnier Aff, (Docket No. 45-3) ¶¶ 6-13; Graham Aff, (Docket No. 45-8) ¶ 7; Brown Aff, (Docket No. 45-7) ¶ 8; Ryerson Aff, (Docket No. 45-10) ¶¶ 5-13.

2

medical screening and was designated for a single cell with a single lower bunk.  Felix-Tores Affirm. ¶¶ 14, 15, 20, 21; Dep. at 10.

On November 2, 2005, Felix-Torres was transferred to the infirmary for monitoring of his blood sugar and insulin levels.  Felix-Torres Affirm. ¶ 16; Docket No. 48-3 at 41.  Felix-Torres remained in the infirmary for six days.  Felix-Torres Affirm. ¶ 17.  While in the infirmary, Felix-Torres requested a lower bunk order.  Id.  Under DOCS policy, his condition required him to have a lower bunk due to his seizures and diabetes.  Id. ¶ 22; Docket No. 48-3 at 60.  Felix-Torres spoke with defendant Ryerson, the Auburn Nurse Administrator, during the six day monitoring period and conveyed his need for a lower bunk order.  Felix-Torres Affirm. ¶ 24.  On November 8, 2005, Felix-Torres was discharged from the infirmary and returned to his cell with the single ,lower bunk.  Id. ¶ 18.

At an administrative screening of Felix-Torres' records, Felix-Torres was recommended for double-celling.  Bellnier Aff. ¶ 17 & Ex. B; Docket No. 48-3 at 72.  However, the DOCS employee responsible for completing the screening, a non-party here, neglected to obtain the review of the medical staff.  Id.  A review by the medical staff would have confirmed that Felix-Torres was diabetic and that, if double-celled, he should have been restricted to a lower bunk.  Bellnier Aff. ¶ 25 & Ex. C; Felix-Torres Affirm. ¶ 46.  On December 2, 2005, Felix-Torres was re-assigned to a double-cell shared with another inmate.  Felix-Torres Affirm. ¶ 25; Dep. at 10; Docket No. 45-5 at 2; Docket No. 48-3 at 42.

After being informed of his impending move, Felix-Torres pleaded with two unknown corrections officers and an unknown sergeant to be assigned the lower bunk due to his medical conditions and attendant seizures.  Felix-Torres Affirm. ¶¶ 25-34; Dep. at 11-15.

3

His requests were summarily dismissed.  Felix-Torres Affirm. ¶¶ 25-34.[4]  On December 2, 2005, his first night in the upper bunk, Felix-Torres fell to the floor from the upper bunk while sleeping, suffering a dislocated shoulder and injuries to his head.  Grievance (Docket No. 45-6) at 2; Felix-Torres Affirm. ¶¶ 36-39; Depo. at 15-18; Docket No. 48-3 at 44-45.  Felix-Torres was treated at an outside hospital.  Grievance at 2; Depo. at 16.

Upon his return to Auburn, Felix-Torres spent the next six days at the facility infirmary.  Felix-Torres Affirm. ¶ 42; Docket No. 48-3 at 46.  On December 8, 2005, Felix-Torres was discharged from the infirmary and again assigned to the upper bunk in the same cell where the fall occurred.  Felix-Torres Affirm. ¶ 44; Docket No. 48-3 at 43-49.  Felix-Torres was granted a lower bunk restriction effective December 12, 2005.[5]  Bellnier Aff. ¶ 22 & Ex. C; Felix-Torres Affirm. ¶ 45; Docket No. 48-3 at 43; Docket No. 45-6 at 11.  This action followed.

## II.  Discussion

In his complaint, Felix-Torres alleges that defendants violated his Eighth Amendment rights[6] by assigning him to an upper bunk despite his medical condition.  Defendants move for summary judgment on the grounds that (1) Felix-Torres has failed to allege the personal

---

[4] The John Doe defendants are no longer parties to the present case as they were dismissed in an order filed October 17, 2007.  Docket No. 19.

[5] Defendant Graham claims that this lower bunk order was effective on December 2, 2005.  Graham Aff. (Docket No. 45-8) ¶ 13.  This appears to be a typographical error, or a conflict concerning the facts because records indicate that the order was effective on December 12, 2005.  Bellnier Aff. ¶ 22 & Ex. C; Felix-Torres Affirm. ¶ 45; Docket No. 48-3 at 43; Docket No. 45-6 at 11.

[6] See note 2 supra.

involvement of any defendant, (2) there is no merit to his claim, and (3) defendants are entitled to qualified immunity.

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d

5

471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).. However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

## B. Personal Involvement

Defendants contend that Felix-Torres has failed to establish the personal involvement of any defendant. "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

(1) [T]he defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent[7] in supervising subordinates who committed

_____

[7] Both gross negligence and recklessness, connote a "kind of conduct where the defendant has reason to know of facts creating a high degree of risk of physical harm to

the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

Felix-Torres alleges that defendants Brown, Graham, and Ryerson all engaged in a "gross omission in supervision . . ." which led to his fall from an upper bunk.  See Pl. Mem. of Law (Docket No. 48-2) at 8-17.  Personal involvement is established when a supervisor "fail[s] to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and h[is] injury."  Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002) (citations omitted); see also Villante v. Dep't of Corr. of City of New York, 786 F.2d 516, 519 (2d Cir. 1986) (citations omitted) (holding that a failure to "supervise sufficiently egregious to amount to gross negligence or deliberate indifference . . . ." suffices to allege personal involvement); Owens v. Haas, 601 F.2d 1242, 1246 (2d Cir. 1979) ( "While some causal link must be made between the [defendants'] failure to train and the violation of constitutional rights, a single brutal incident . . . may be sufficient to suggest that link.").  Thus, defendants "may be found liable if, in supervising [the correctional and medical staff, they] exhibited gross negligence or deliberate indifference to a high risk that [staff] would violate [Felix-Torres'] constitutional rights, and [defendants'] neglect cause [staff] to violate [Felix-Torres'] rights."  Poe, 282

---

another and deliberately acts or fails to act in conscious disregard or indifference to that risk."  Poe, 282 F.3d at 140 n.14 (internal quotation marks and citation omitted).

F.3d at 140.

Additionally, supervisors may be held liable for failing to inquire into a subordinate's actions based on actual or constructive knowledge of his or her work.  Poe, 282 F.3d at 141 (citations omitted).  Thus, courts must determine "whether [defendants] knew or should have known that there was a high degree of risk that [staff] would behave inappropriately . . . , but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary . . . , and that failure caused a constitutional injury . . . ."  Id. at 142 (citations omitted).  Imputed knowledge has been upheld where an official failed "to ensure plaintiff's constitutional rights with a lack of duty on his part . . . ."  Id. at 143-44 (internal quotation marks and citation omitted).

### 1. Brown[8]

A position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement.  Thus, Brown, the Auburn Deputy Superintendent of Administration, cannot be held liable solely because he held a supervisory positions over other corrections officials.

Felix-Torres does not contend that Brown was directly involved with the alleged constitutional violations.  In fact, Felix-Torres testified that he never communicated with Graham, orally or in writing.  Dep. at 20.  Additionally, no evidence has been proffered that Brown had any knowledge that Felix-Torres was not a medically appropriate candidate for

---

[8] After the fall, Felix-Torres spent a week in the infirmary and was discharged back to an upper bunk for another three days.  There is no evidence that Felix-Torres suffered any additional injury or exacerbated his previous injuries in this period.

assignment to an upper bunk in contravention of DOCS policy.  Brown Aff. (Docket No. 45-7) ¶¶ 11-12.   Brown was not responsible for reviewing any forms associated with the double-celling practice nor the cells or bunks to which inmates were assigned.  Id.  ¶¶ 9-10.

Thus, the record on this motion as to Brown demonstrates without contradiction that Brown bore overall responsibility for the procedures which led to Felix-Torres' assignment to an upper bunk.  However, Brown never communicated with Felix-Torres, either directly or in writing, and was never advised of Felix-Torres request for assignment to a lower bunk or of the medical conditions which supported that request.  There is no evidence that the procedures for assigning inmates to lower or upper bunks was defective or that, if defective, Brown was ever notified of the defects.  Brown was, therefore, not involved in the decision to assign Felix-Torres to an upper bunk and had no reason to know of that decision.

Any claim against Brown thus rests on whether there is evidence that Brown's supervision of others was grossly negligent.  As discussed infra, there remain questions of fact as to the liability of certain of Brown's subordinates.  However, the mere fact that a subordinate may have deprived an inmate of a constitutional right, without more, will not support a claim against that subordinate's supervisor.  See Black, 76 F.3d at 74.  Such additional evidence might include, for example, proof that Brown had prior knowledge of other instances in which subordinates had acted wrongfully in a similar manner or that he had direct knowledge of the misconduct in Felix-Torres' case.  No such evidence has been proffered here.  Accordingly, Felix-Torres has failed to raise a question of fact as to Brown's liability and defendants' motion as to Brown on this ground should be granted.

**2. Ryerson**

Ryerson asserts that she never saw or spoke with Felix-Torres and was never told of Felix-Torres' medical condition until after he fell from the upper bunk on December 2, 2005. Ryerson Aff. (Docket No. 45-10) ¶ 25.  Felix-Torres asserts that he spoke with Ryerson during his initial stay in the infirmary when the medical staff monitored his condition and medication about the seriousness of his diabetes and his need for a lower bunk order. Felix-Torres Affirm. ¶ 24.  Construing the facts in the light most favorable to Felix-Torres, this conflict suffices to create a question of fact whether Ryerson had personal knowledge of Felix-Torres' medical condition and tendency to suffer seizures and falls.  Whether Felix-Torres so advised Ryerson is material to, inter alia, whether Ryerson acted with deliberate indifference in failing to insure a lower bunk assignment for Felix-Torres.  Given Felix-Torres' assertion and Ryerson's duties, this conflict suffices to defeat Ryerson's motion for summary judgment and requires a determination of the credibility of the conflicting statements.

Accordingly, defendants' motion as to Ryerson should be denied.


**3. Graham**

Graham presided over Felix-Torres' grievance hearing.  Graham affirmed the findings of an investigation conducted by an unnamed corrections officer that Felix-Torres had already been moved to a lower bunk and his grievance was resolved as moot.  Graham Aff. (Docket No. 45-8) ¶ 14 & Ex. A.  This is insufficient to establish personal involvement as there exists no evidence in the record that Graham did any more than affirm that Felix-Torres had been

assigned a lower bunk.  Felix-Torres has failed to demonstrate how Graham's actions in any way caused or continued the upper bunk assignment that led to his injuries.  Even if Felix-Torres named Graham as a defendant because of Graham's position of authority, this cannot establish the requisite personal involvement.  There are no allegations that Graham was present, or had any knowledge, of the alleged constitutional violations.

While Felix-Torres alleges that Graham was grossly negligent in his supervision of all other named defendants as Superintendent, no evidence has been proffered as to how Graham was negligent in this respect or that he should have known that his subordinates or procedures he instituted or oversaw were deficient.  No evidence exists that Graham had actual or constructive knowledge of any facts from which Graham should have concluded that Felix-Torres was being deprived of a constitutional right.   Graham was unaware of Felix-Torres' diabetes, assignment to an upper bunk, or fall until after the fact, by which time staff had resolved all of the aforementioned issues.   Thus, there is no evidence that Graham was a causal link between any actions of the corrections or medical staff and the alleged constitutional violations.

Accordingly, defendants' motion as to Graham on this ground should be granted.


### C. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  This prohibition extends to the provision of medical care and inmate safety.  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Second,

the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  Id.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Id. at 844.

A prisoner must first show serious illness or injury to state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)).  Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d 698, 702 (2d Cir. 1998)).  Defendants do not dispute that Felix-Torres' injuries from the fall at least raise questions of fact on the first prong.  However, defendants contend that there is no evidence of deliberate indifference to Felix-Torres' medical condition.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  Chance, 143 F.3d at 702.  Thus, prison officials must intentionally deny treatment or accommodations for medical conditions or intentionally interfering with treatment once prescribed.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate.  Chance, 143 F.3d at 703.  Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . .  are not adequate grounds for a section 1983

12

claim." <u>Sonds v. St. Barnabas Hosp. Corr. Health Servs.</u>, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

In the context of Eighth Amendment claims concerning assignments to upper rather than lower bunks, courts have consistently found that where the gravamen of the claim is that an inmate was improperly denied an order for a lower bunk assignment, this constitutes at most a disagreement over the appropriate treatment, fails to demonstrate deliberate indifference,  and is insufficient to withstand a motion for summary judgment. <u>See</u> <u>Goodson v. Willard Drug Treatment Campus</u>, 615 F. Supp. 2d 100, 101-02 (W.D.N.Y. 2009) (gathering cases).  However, where there was in place a medical order that an inmate be assigned to a lower bunk, that order was known to the defendants, and the inmate was thereafter assigned to an upper bunk resulting in an injury to the inmate, the evidence suffices to raise a question of fact on the second prong of the claim.  <u>See</u> <u>Perdue v. Dreyer</u>, No. 03-CV-770Sr., 2008 WL 4826260, at *5-6 (W.D.N.Y. Nov. 5, 2008).

There is no dispute here that Felix-Torres' medical condition required that he be assigned to a lower bunk.  Thus, the issue presented is whether Felix-Torres has presented sufficient evidence to raise a question of fact whether defendants knew of his need for assignment to a lower bunk and disregarded that need.  Felix-Torres asserts that over the six-day period when he was confined to the infirmary to monitor his medical condition before assignment to a cell, told Ryerson that his diabetes and hypoglycemic seizures required his assignment to a lower bunk.  Felix-Torres Affirmn. ¶¶ 17, 24.  Thus, viewing the evidence in the light most favorable to Felix-Torres, he suffered a medical condition which required he be assigned a lower bunk, the need for the lower bunk order was reported to Ryerson, and Ryerson disregarded Felix-Torres' need for a lower bunk

13

assignment leading to his fall and injuries.  This evidence suffices to raise a question of fact as to the contention that Ryerson was deliberately indifferent and to defeat her motion for summary judgment on this ground.  See Perdue, 2008 WL 4826260, at *5.

Moreover, Auburn's double-celling screening procedure relied on multiple departments and parties collaborating to come to a final decision.  In this case, the medical department was omitted from the decision whether Felix-Torres was appropriate for double-celling and, if so, whether he required a lower bunk order.  Bellnier Aff. ¶ 17 & Ex. B.  However, thirty days prior, the medical department was aware that Felix-Torres was diabetic, insulin-dependent, and susceptible to hypoglycemic seizures.  Therefore, Felix-Torres met medical criteria for a lower bunk placement.  Docket No. 48-3 at 60.  The medical department's failure to issue a lower bunk order after acquiring direct knowledge of Felix-Torres' need for such an order constitutes evidence of intentional disregard for Felix-Torres' health and safety.

Defendants claim that this omission was merely an oversight and was, at worst, a negligent mistake which is insufficient to demonstrate deliberate indifferences.  Estelle, 429 U.S. at 105-106 (noting that "an inadvertent failure to provide adequate medical care [is insufficient to sustain a constitutional claim because] . . . negligen[ce] in . . . diagnosing or treating a medical condition does not state a valid claim . . . .").  Defendants also claim that once the mistake was brought to the attention of the medical staff, it was immediately rectified and Felix-Torres was issued a permanent lower bunk order.  These contentions are not fully supported by the record, however, as following his fall, Felix-Torres was actually discharged back to an upper bunk for an additional three days.  This failure to correct a health hazard immediately is indicative of intentional delay and deliberate

indifference.

Additionally, Bellnier claims that he accidentally omitted the medical department which was merely negligent and inadvertent.   Bellnier was responsible for approving double-celling orders.  Bellnier Aff. ¶ 18.  Bellnier claims to have delegated responsibility for investigating and preparing the double celling orders to a subordinate, a non-party, who generally did "a complete and thorough job . . . ."  Id.  ¶¶ 15-16.  Despite her competence, this subordinate failed properly to forward the double-celling review to the medical department where a simple records review would have shown that Felix-Torres was undeniably required to have a lower bunk order.  Bellnier received this incomplete review which showed no review by the medical department and signed it either without reading it or without returning it for medical department review.

Bellnier alleges that the sheer volume of papers he signed in a week made it impossible to review the content of the forms before approving them.  Bellnier Aff. ¶ 16.  This failure to read what he approved, however, may constitute more than mere negligence.  Reading a form prior to signing it did not require Bellnier to conduct a second independent investigation into the appropriateness of the double-celling order.  Rather, it ensured that an investigation and review were conducted as evidenced by having all sections of the double-celling screening form completed.  By signing forms without reading them, Bellnier arguable abdicated his assigned responsibilities to a subordinate, a decision which could reasonably be found to constitute grossly negligent and reckless conduct.

Finally, while "ordinary negligence by itself could not establish a cause of action under Section 1983, repeated acts of negligence can be evidence of indifference" amounting to

15

gross negligence.[9]  Tylena M. v. Heartshare Children's Servs., 390 F. Supp. 2d 296, 302

(S.D.N.Y. 2005) (internal quotation marks and citations omitted).  Gross negligence is

defined as "an indifference to present legal duty and utter forgetfulness of legal obligations

. . . ."  Doe v. New York City Dep't of Soc. Servs., 649 F.2d 134, 143 n.4 (2d Cir. 1981).

Bellnier's acknowledged practice of failing to insure that  (1) the appropriate departments

were contacted for input and (2) the accuracy of the subordinate's work was checked may

constitute repeated acts of negligence.  Construing the evidence in the light most favorable

to Felix-Torres, these omissions also constitute evidence of gross negligence indicative of

deliberate indifference. Thus, a question of fact remains as to whether Bellnier and

Ryerson were deliberately indifferent to Felix-Torres' serious medical needs.

Accordingly, defendants' motion on this ground should be denied as to Bellnier and

Ryerson.


### 3. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity.  Qualified

immunity generally protects governmental officials from civil liability "insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982);

Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80

Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are

---

[9] While frequently used synonymously, a distinction exists between gross
negligence and deliberate indifference.  Doe v. New York City Dep't of Soc. Serv., 649
F.2d 134, 143 (2d Cir. 1981) (citations omitted).  Gross negligence describes "a type of
conduct" while deliberate indifference describes "a state of mind."  Id.

clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, as discussed supra, Felix-Torres has demonstrated a deprivation of his Eighth Amendment right by Bellnier and Ryerson when the evidence is viewed in the light most favorable to Felix-Torres. It must then be determined whether the right in question was clearly established at the time of the violation.

It has long been held that the Eighth Amendment "requires that inmates be furnished with . . . reasonable safety [and i]t is cruel and unusual punishment to hold convicted criminals in unsafe conditions." Helling v. McKinney, 509 U.S. 25, 33 (1993) (internal quotation marks and citations omitted). Thus, the Eighth Amendment right which Felix-Torres contends was violated by the actions of Bellnier and Ryerson was clearly established in November and December, 2005 when the events at issue herein transpired.

Accordingly, it is recommended that defendants' motion on this ground as to Bellnier and Ryerson be denied.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Docket No. 45) be:

    1.  **GRANTED** as to defendants Graham and Brown; and

    2.  **DENIED** as to defendants Bellnier and Ryerson.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  August 14, 2009
       Albany, New York

_____
United States Magistrate Judge