UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NORBERTO JAVIER FELIX-TORRES,

                                    Plaintiff,

                                                                    9:06-CV-1090
v.                                                                  (GTS/GHL)

HAROLD GRAHAM, Superintendent, Auburn
Correctional Facility; JOSEPH BELLNIER,
Superintendent of Security, Auburn
Correctional Facility; DAWSON BROWN,
Deputy of Administration, Auburn
Correctional Facility; and NANCY RYERSON,
Nurse Administrator, Auburn Correctional
Facility,

                                    Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

NORBERTO JAVIER FELIX-TOREES, 99-B-0971
   Plaintiff, *Pro Se*
Franklin Correctional Facility
P.O. Box 10
Malone, New York 12953

HON. ANDREW M. CUOMO                            KRISTA A. ROCK, ESQ.
   Attorney General for the State of New York   Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

          Currently before the Court in this *pro se* prisoner civil rights action filed by Norberto

Javier Felix-Torees ("Plaintiff") against four employees of Auburn Correctional Facility

("Defendants") are (1) Defendants' motion for summary judgment (Dkt. No. 45), (2) United

States Magistrate Judge David R. Homer's Report-Recommendation recommending that

Defendants' motion be granted in part and denied in part (Dkt. No. 52), and (3) Defendants'
Objections to the Report-Recommendation (Dkt. No. 53).  Plaintiff did not submit any objections
to the Report-Recommendation.  For the following reasons, the Report-Recommendation is
accepted and adopted as modified; Defendants' motion for summary judgment is granted in part
and denied in part; and Plaintiff's Complaint is dismissed except for his claims against Defendant
Bellnier.

## I.      BACKGROUND

On September 11, 2006, Plaintiff filed his Complaint in this action.  (Dkt. No. 1.)
Construed with the utmost liberality, Plaintiff's Complaint alleges civil rights violations under
the Eighth and Fourteenth Amendments.  (*Id*.)  More specifically, Plaintiff alleges that
Defendants (1) were deliberately indifferent to his medical needs, and (2) failed to follow New
York State Department of Correctional Services' ("DOCS'") procedures with respect to double-
celling and bunk placements.  (*Id*.)

On January 26, 2009, Defendants filed a motion for summary judgment, arguing that (1)
Plaintiff has failed to establish an Eight Amendment claim for deliberate indifference, (2) all
Defendants are entitled to qualified immunity, (3) Plaintiff has failed to establish that Defendants
Graham, Brown and Ryerson were personally involved in the constitutional violations alleged,
and (4) Plaintiff's negligence claim is not actionable under 42 U.S.C. § 1983.  (Dkt. No. 45, Part
15.)

On May 4, 2009, after being granted two extensions of time by the Court to do so,
Plaintiff submitted his response in opposition to Defendants' motion.  (Dkt. No. 48.)  In his
response, Plaintiff argues that (1) Defendants were deliberately indifferent to his medical needs,
(2) repeated acts of negligence are actionable under 42 U.S.C. § 1983, (3) Defendants violated

DOCS' policy and procedure regarding bunk placements, and (4) Defendants are not entitled to qualified immunity. (Dkt. No. 48, Part 2.)

On August 14, 2009, Magistrate Judge Homer issued a Report-Recommendation recommending that Plaintiff's claims against Defendants Graham and Brown be dismissed for lack of personal involvement. (Dkt. No. 52 at 8-11.) Magistrate Judge Homer further recommended that the claims against Defendants Ryerson and Bellnier not be dismissed because, based on the current record, genuine issue of material fact exist regarding whether they were personally involved in the constitutional violation alleged. (*Id*. at 10, 14-16.) Familiarity with the specific grounds of Magistrate Judge Homer's Report-Recommendation is assumed in this Decision and Order.

On August 26, 2009, Defendants timely filed their Objections to the Report-Recommendation. (Dkt. No. 53.) Generally, in their Objections, Defendants challenge Magistrate Judge Homer's recommendation that Defendants' motion be denied with regard to Plaintiff's claims against Defendants Ryerson and Bellnier. (Dkt. No. 53 at 4-10.)

## II.    APPLICABLE LEGAL STANDARDS

### A.    Standard of Review of Magistrate Judge Homer's Report-Recommendation

When specific objections are made to a magistrate judge's report-recommendation, the Court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C).[1]

---

[1]        On *de novo* review, "[t]he judge may . . . receive further evidence . . . ." 28 U.S.C. § 636(b)(1)(C). However, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the

When only general objections are made to a magistrate judge's report-recommendation, the Court reviews the report-recommendation for clear error or manifest injustice. *See Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999).[2]  Similarly, when a party makes no objection to a portion of a report-recommendation, the Court reviews that portion for clear error or manifest injustice. *See Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition [citations omitted].  After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

### B.      Standard Governing Motion for Summary Judgment

Magistrate Judge Homer correctly recited the legal standard governing a motion for summary judgment.  (Dkt. No. 52, at 5-6.)  As a result, these standards are incorporated by reference in this Decision and Order.

---

hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate").

[2]      *See also Vargas v. Keane*, 93-CV-7852, 1994 WL 693885, at *1 (S.D.N.Y. Dec. 12, 1994) (Mukasey, J.) ("[Petitioner's] general objection [that a] Report ... [did not] redress the constitutional violations [experienced by petitioner] . . . is a general plea that the Report not be adopted ... [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636."), aff'd, 86 F.3d 1273 (2d Cir.), *cert. denied*, 519 U.S. 895 (1996).

**III.    ANALYSIS**

As indicated above in Part I of this Decision and Order, in his Report-Recommendation, Magistrate Judge Homer concluded, *inter alia*, that, based on the current record, genuine issues of material fact exist as to (1) whether Defendant Ryerson was personally involved in the constitutional violation alleged (through, with deliberate indifference, failing to ensure a lower bunk assignment for Plaintiff), and (2) whether Defendant Bellnier was personally involved in the constitutional violation alleged (through, with deliberate indifference, neglecting to approve Plaintiff's lower bunk assignment).  (*Id*. at 10, 11-16.)

In their Objections, Defendants challenge both of these conclusions.  (Dkt. No. 53, at 4-10.)  For example, they argue that (1) based on Plaintiff's own admission during his deposition, Defendant Ryerson was not personally involved in the constitutional violation alleged after Plaintiff fell from his bunk on December 2, 2005, and (2) it was not possible for Defendant Bellnier to remedy a wrong arising out of a single incident of which he had no advanced notice.  (*Id*.)

These Objections constitute specific challenges to those portions of the Report-Recommendation recommending the denial of Defendants' motion for summary judgment with regard to Plaintiff's claims against Defendants Bellnier and Ryerson.  As a result, the Court reviews these portions of the Report-Recommendation *de novo*, and reviews the remaining portions of the Report-Recommendation for clear error, for the reasons stated above in Part II.A. of this Decision and Order.

**A.    Plaintiff's Claim Against Defendant Ryerson**

The specific grounds in support of Magistrate Judge Homer's recommendation that the Court deny Defendants' motion with regard to Defendant Ryerson are as follows: (1) "a question

5

of fact [exists regarding] whether Ryerson had personal knowledge of Felix-Torres' medical condition and tendency to suffer seizures and falls"; (2) a question of fact exists regarding whether Ryerson's duties involved "insur[ing] lower bunk assignments for [prisoners who demonstrate a medical need for such assignments]"; and (3) a question of fact exists regarding whether, by disregarding Plaintiff's reported medical need for a bottom bunk, Ryerson was deliberately indifferent to that medical need.  (Dkt. No. 52, at 10, 13-14.)

In support of the first referenced question of fact, Magistrate Judge Homer relies on Plaintiff's sworn assertion (in an affidavit submitted in opposition to Defendants' motion for summary judgment) that, during his initial stay in the infirmary (when the medical staff monitored his condition and medication), he spoke with Ryerson about the seriousness of his diabetes and his need for a lower bunk order.  (*Id*. at 10, 13 [citing Felix-Torres Affirm, at ¶ 24, attached at Dkt. No. 48, Part 3, at 5].)[3]  In support of the second referenced question of fact, Magistrate Judge Homer relies on Ryerson's duties as the Auburn C.F. Nurse Administrator.  (*Id*. at 10.)  Finally, in support of the third referenced question of fact, Magistrate Judge Homer relies, again, on Plaintiff's sworn assertion (in an affidavit) that, during his initial stay in the infirmary (when the medical staff monitored his condition and medication about the seriousness of his diabetes), he spoke with Ryerson about his need for a lower bunk order.  (*Id*. at 13 [citing Felix-Torres Affirm, at ¶¶ 17, 24, attached at Dkt. No. 48, Part 3, at 4-5].)

In their Objections, Defendants offer three arguments in response to Magistrate Judge Homer's recommendation regarding Defendant Ryerson.  (Dkt. No. 53, Part 1, at 4-5.)  First,

---

[3]      The Court notes that Defendant Ryerson swears that she never saw or spoke with Plaintiff and was never told of his medical condition until after he fell from the upper bunk on December 2, 2005.  (Dkt. No. 45, Part 10, at ¶ 25.)

argue Defendants, no admissible record evidence exists controverting Defendant Ryerson's

sworn statement that she had no personal knowledge of Felix-Torres' medical condition and

tendency to suffer seizures and falls, because Plaintiff's affidavit is inadmissible under the

circumstances.  (*Id*. at 4-5.)  Second, argue Defendants, no admissible record evidence exists

controverting Defendant Ryerson's sworn statement that she played no role in ensuring lower

bunk assignments for prisoners who demonstrate a medical need for such assignments.  (*Id*. at 4,

6.)  Third, argue Defendants, because Defendant Ryerson was not sufficiently aware of Plaintiff's

medical need for a bottom bunk, and because she played no role in ensuring lower bunk

assignments for prisoners in need of them, she did not act with deliberate indifference to

Plaintiff's medical need for a bottom bunk.  (*Id*. at 4-6.)

> **1.**      **Whether Admissible Record Evidence Exists Establishing that
>              Defendant Ryerson Was Personally Involved in the Constitutional
>              Violation Alleged**

Defendants begin their lack-of-personal-involvement argument by arguing that

Defendant Ryerson swore in her sworn affidavit (attached at Dkt. No. 45, Part 10, ¶¶ 17, 18, 24,

25) that she had no personal knowledge of Plaintiff's medical condition and tendency to suffer

seizures and falls.  (Dkt. No. 53, Part 1, at 4.)  Defendants acknowledge that Plaintiff has sworn

in his affidavit (attached at Dkt. No. 48, Part 3, at 5, ¶ 24) that, during his initial medical

evaluation in November 2005, he told Defendant Ryerson about his medical need for a lower

bunk.  (Dkt. No. 53, Part 1, 4-5.)  However, Defendants argue that Plaintiff's affidavit is

inadmissible and therefore insufficient to create a genuine issue of material fact for purposes of

their motion.  (*Id*.)  More specifically, Defendants argue that Plaintiff's affidavit is in admissible

for two reasons: (1) it contradicts his prior sworn testimony given during his deposition

testimony in July 2008; and (2) he already admitted (in Paragraph 14 of his Rule 7.1 Response,

attached at Dkt. No. 48, Part 1, at 2) Defendants' factual assertion that Plaintiff did not address his concerns about a top bunk assignment to Defendant Ryerson (in Paragraph 14 of their Rule 7.1 Statement). (*Id.*)

Addressing Defendant's second reason first, the Court finds that, even if the Court were to look past the fact that Plaintiff expressly "admit[s]" the truth of the facts asserted in Paragraph 14 of Defendants' Rule 7.1 Statement (*see* Dkt. No. 48, Part 1, at 2), the Court can finding nothing in the remainder of Plaintiff's Rule 7.1 Response that successfully controverts the facts asserted in Paragraph 14 of Defendants' Rule 7.1 Statement. The closest Plaintiff comes to doing so is in Paragraph 69 of his Rule 7.1 Response, in which he states, "Plaintiff believes that he was seen by defendant Ryerson during his medical evaluation between the dates of November 02, 2005, and November 08, 2005." (Dkt. No. 48, Part 1, at 10.) The problem is that this denial is not supported by any record citation, as required by Local Rule 7.1(a)(3).[4]

In any event, even if (out of special solicitude to Plaintiff) the Court were construct a *sua sponte* review of the record in search of evidence supporting this denial, the only record evidence

---

[4] The Court notes that it is questionable whether Defendants' notification of January 26, 2009, sufficiently informed Plaintiff of the consequences of failing to support his Rule 7.1 denials with a specific citation to the record where the factual issue arises. (Dkt. No. 45, Part 1.) *See Cruz v. Church*, 05-CV-1067, 2008 WL 4891165, at *2-3 (N.D.N.Y. Nov. 10, 2008) (Suddaby, J.) However, the Clerk of the Court for the Northern District of New York has provided to all correctional facilities in New York State, including Plaintiff's correctional facility at the time in question, copies of the Northern District's Local Rules of Practice, which contain an adequate notification. *See* N.D.N.Y. L.R. 7.1(a)(3). Moreover, on June 25, 2008, the Clerk's Office sent Plaintiff a Northern District's *Pro Se* Handbook, which contains a notice of consequences and refers to Local Rule 7.1. (Docket Entry for 6/25/08.) *See* United States District Court for the Northern District of New York *Pro Se* Handbook, at 41-42, http://www.nynd.uscourts.gov/documents/ProSeHandbook2008.pdf. Clearly, Plaintiff understood these consequences because he twice requested (and was granted) an extension of the deadline by which to respond to Defendants' motion, and then submitted a Rule 7.1 Response consisting of matching numbered paragraphs that often contained citations to the record. (*See* Dkt. Nos. 46-47; Dkt. No. 48, Part 1.)

the Court can find is one paragraph of Plaintiff's affidavit, in which he swears that, "during the medical evaluation during the dates of November 02, 2005 to November 08, 2005, I did speak to defendant Nancy Ryerson in her official capacity as Nurse Administrator of the Health Services Unit and explained my need for a lower bunk due to my hypoglycemic seizures."  (Dkt. No. 48, Part 3, at 5, ¶ 24.)  The issue then becomes whether the Court can disregard this affidavit testimony under the circumstances.

It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment.[5]  However, there is a narrow exception to this well-established rule.  *Blake v. Race*, 487 F. Supp.2d 187, 202 (E.D.N.Y. March 29, 2007).  In *Jeffreys*, the Second Circuit explained that this narrow exception is for testimony by a non-movant that possesses the following two characteristics: (1) it constitutes almost the exclusive basis for a disputed issue of fact in the case (or, expressed differently, it is largely unsubstantiated by any other direct evidence); and (2) it is so lacking in credibility (because the testimony is incomplete and/or replete with inconsistencies and improbabilities) that, even after drawing all inferences in the light most favorable to the non-movant, no reasonable jury could

---

[5]        *See Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 174 (2d Cir. 2006) ("[C]redibility, in the ordinary course of things, is for a fact-finder to evaluate."); *Stichting v. Schreiber*, 407 F.3d 34, 55 (2d Cir. 2005) ("[T]o resolve at the summary judgment stage, and before Mead testifies, the question of whether a reasonable jury might believe Mead would, we think, amount to a credibility determination that we are not entitled to make."); *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996) (at the summary judgment stage, the court "is . . . to eschew credibility assessments"); *accord*, *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."); *accord*, *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005); *see also Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying [the summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."); *accord*, *U.S. v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994).

find for the non-movant.[6]

Here, the Court finds that first requirement of the above-stated two-part test has been

satisfied.  The affidavit testimony in question constitutes the exclusive basis for a disputed issue

of fact in the case.  Indeed, it is directly contradicted by the following record evidence: (1)

Defendant Ryerson's affidavit testimony that she had no personal knowledge of Plaintiff's

medical condition and tendency to suffer seizures and falls (Dkt. No. 45, Part 10, ¶¶ 17, 18, 24,

25); (2) Plaintiff's own deposition testimony, in which he swore that he never spoke to Defendant

Ryerson prior to being doubled celled at Auburn Correctional Facility, and that she never

personally examined him (Dkt. No. 45, Part 14, at 21-24); (3) the affidavit testimony of

Defendants Bellnier and Ryerson that, during the time period in question, Correction Counselor

---

[6]     *See Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("[I]n the rare circumstances where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether . . . there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account. . . .  In the circumstances presented in the instant case-where (1) the District Court found nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony, and (2) the District Court, even after drawing all inferences in the light most favorable to the plaintiff, determined that no reasonable person could believe Jeffreys' testimony, . . . we hold that the District Court did not err by awarding summary judgment.  Because no reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in the complaint, . . . conclude that summary judgment was appropriate.") [internal quotation marks and citations omitted]; *cf. Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 42-46 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line [1] was "unsupported by documentary or other concrete evidence," and indeed was contradicted by the other record evidence, and [2] was "conclusory" and "inconsistent" with plaintiffs' present representations); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612-15 (S.D.N.Y. 2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony [1] recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign," and [2] were inconsistent with plaintiff's other statements and claims), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (unreported decision, cited not as precedential authority but merely to show the case's subsequent history, in accordance with Second Circuit Local Rule § 0.23).

Lynn Anderson conducted the majority of the double-celling screening process (Dkt. No. 45, Part 10, ¶ 6; Dkt. No. 45, Part 3, ¶¶ 7-8); and (4) Plaintiff's Ambulatory Health Records from the time in question, which evidences that Plaintiff was seen by at least two separate nurses, neither of whom were Nurse Administrator Nancy Ryerson, whose signature appears elsewhere in the record (*compare* Dkt. No. 48, Part 3, at 41, 68 *with* Dkt. No. 45, Part 10, at 6 *and* Dkt. No. 48, Part 3, at 49).

Moreover, the Court finds that the second requirement of the above-stated two-part test has also been satisfied.  The affidavit testimony in question is incomplete in that it neglects to state precisely on what specific date(s), and at what location, he spoke to Defendant Ryerson between "the dates of November 02, 2005 to November 08, 2005."  (Dkt. No. 48, Part 3, at 5, ¶ 24.)  In addition, the affidavit testimony in question is flatly inconsistent with the only other testimony Plaintiff offers on the subject–namely, his above-described deposition testimony.[7] The Court notes that, although errata sheets were provided to Plaintiff with his deposition transcript, no changes to the transcript were requested by Plaintiff.  (Dkt. No. 45, Part 13, ¶ 4.) The Court notes also that, on September 19, 2008, Plaintiff verified the truth and correctness of the deposition transcript.  (Dkt. No. 45, Part 14, at 27.)  Finally, the Court notes that more than seven months elapsed between Plaintiff's verification of the truth and correctness of the deposition transcript on September 19, 2008, and Plaintiff's submission of inconsistent testimony on April 30, 2009.  (Compare Dkt. No. 45, Part 14, at 27 with Dkt. No. 48, Part 3, at 10.)

"It is well-settled that a party may not defeat . . . a motion [for summary judgment] by submitting an affidavit that disputes [or contradicts] his prior sworn testimony."  *Trans-Orient*

---

[7]      It is also inconsistent with Plaintiff's above-described admission to the facts asserted in Paragraph 14 of Defendants' Rule 7.1 Statement.

*Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991) (citation

omitted); *Langman Fabrics v. Graf Californiawear, Inc.*, 160 F.3d 106, 112 (2d Cir. 1998)

(citation omitted).  "The reason for this rule is that permitting a non-movant to oppose a motion

for summary judgment in this way would 'diminish[ ] the utility of summary judgment as a

procedure for screening out sham issues of fact.'"  *Duttweiler v. Eagle Janitorial, Inc.*,

05-CV-0886, 2009 WL 1606351, at \*4 (N.D.N.Y. June 4, 2009) (Suddaby, J.) (citing *Perma

Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 [2d Cir. 1969]); *Hayes v. New York City

Dept. of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[A]n affidavit . . . that, by omission or addition,

contradicts the affiant's previous deposition testimony' is insufficient to create a genuine issue of

fact.").  "If [a] [p]laintiff wish[es] to contradict h[is] own deposition testimony, the permissible

procedural method [is] . . . to either (1) clarify h[is] testimony on cross-examination . . . pursuant

to Fed. R. Civ. P. 30(c)(1), or (2) within 30 days after the deposition transcript becomes

available, sign a statement listing the changes to that transcript, and the reasons for making those

changes, pursuant to Fed. R. Civ. P. 30(e)(1)(B)."  *Duttweiler*, 2009 WL 1606351, at \*4.  This

rule applies even to *pro se* litigants.[8]

For all these reasons, the Court disregards Plaintiff's affidavit testimony that "during the

medical evaluation during the dates of November 02, 2005 to November 08, 2005, I did speak to

---

[8]        *See, e.g., Desulma v. City of New York*, 98-CV-2078, 2001 WL 798002, at \*4-5
(S.D.N.Y. July 6, 2001) (enforcing Fed. R. Civ. P. 30[e] against *pro se* civil rights plaintiff),
*adopted*, 98-CV-2078, Decision and Order (S.D.N.Y. filed Dec. 11, 2001); *cf. Pointdujour v. Mt.
Sinai Hosp.*, No. 04-1382, 2005 WL 195108, at \*2 n.2 (2d Cir. Jan. 28, 2005) (enforcing, against
*pro se* civil rights litigant, rule that "a party opposing summary judgment does not create a
triable issue by denying [its] previously sworn statements"); *Shabazz v. Pico*, 994 F. Supp. 460,
469-71 (S.D.N.Y. 1998) (Sotomayor, J.) (enforcing, against *pro se* civil rights litigant, rule that a
party may not "create a material issue of fact by submitting . . . affidavit[s] disputing his own
prior sworn testimony" in order to defeat a summary judgment motion).

defendant Nancy Ryerson in her official capacity as Nurse Administrator of the Health Services

Unit and explained my need for a lower bunk due to my hypoglycemic seizures."  (Dkt. No. 48,

Part 3, at 5, ¶ 24.)

Even assuming that grounds do not exist to disregard Plaintiff's late-blossoming,

incredible affidavit testimony about informing Defendant Ryerson of his medical need for a

bottom bunk, the Court can find no admissible record evidence that Defendant Ryerson–the

Nurse Administrator at Auburn C.F. and thus a supervisor–was personally involved in the

constitutional violations alleged, in one of the five required ways described below in Part III.B.

of this Decision and Order (and described by Magistrate Judge Homer in Part II.B. of his Report-

Recommendation).

In their Rule 7.1 Statement, Defendants assert four facts delineating Defendant Ryerson's

involvement in assignment of lower bunks for prisoners at Auburn Correctional Facility, during

the time in question.  More specifically, Defendants assert as follows: (1) "[Defendant Ryerson's

staff was responsible for] completing the 'Health Services Review Results' section [of the

inmates' Double-Cell Information Sheets] and filling out the [Screening and Physical Assessment

for Placement in a Double Cell] Form"; (2) after completing the specified portion of the

Double-Cell Information Sheets, Defendant Ryerson's staff "would return the Sheet to

[Correction Counselor Lynn] Anderson, to be forwarded to [Deputy Superintendent of Security

Bellnier]"; (3) "Anderson was not supposed to forward the Sheets to [Deputy Superintendent of

Security Bellnier] for his signature until all sections of each Sheet were completed"; and (4)

"[Defendant Ryerson was not] involved in determining where inmates were housed or bunked;

those decisions were made by Movement and Control staff."  (Dkt. No. 45, Part 2, ¶¶ 32, 33, 62,

64.)  Each of these factual assertions is supported by an accurate record citation to admissible

evidence.  (*Id.*; *see also* Dkt. No. 45, Part 10, ¶¶ 12, 13, 16, 17, 18 [Ryerson Aff.]; Dkt. No. 45, Part 3, ¶¶ 12, 13 [Bellnier Aff.].)

In his Rule 7.1 Response, Plaintiff denies each of the four above-referenced facts.  (Dkt. No. 48, Part 1, ¶¶ 32, 33, 62, 64.)  However, Plaintiff's denial of the second and third referenced facts is not supported by citations to the record.  (*Id.* ¶¶ 32, 33)[9]  As a result, the second and third referenced facts are deemed admitted by Plaintiff.

Moreover, Plaintiff's denial of the first and fourth referenced facts is supported only by a citation to Paragraph 49 of his affidavit and Exhibit O to his affidavit.  (*Id.* ¶¶ 62, 64.)  Paragraph 49 of Plaintiff's affidavit states as follows:

> I state that I have filed this action against defendant Ryerson for supervisory liability and direct involvement, by her egregious and gross supervisory omissions in managing her subordinates, whos' [sic] deliberately indifferent action and inactions aloowed [sic] me to be unconstitutionally assigned and placed in a top bunk, resulting in my serious permanent injury.

(Dkt. No. 49, Part 3, at 8-9, ¶ 49.)  Such a statement, which is wholly devoid of facts based on personal knowledge regarding Defendant Ryerson's job duties, and which contains improper legal argument pursuant to Local Rule 7.1(a)(2), is insufficient to create a genuine issue of

---

[9]      Rather, in his denials, Plaintiff merely questions the existence of documentary support, or corroborating evidence, for the affidavit testimony relied on by Defendants to support of the facts asserted.  Such a tactic is insufficient to create a genuine issue of material fact on a motion for summary judgment. *See Cusamano v. Sobek*, 604 F. Supp.2d 416, 453 n.46 (N.D.N.Y. 2009) (Suddaby, J. adopting as modified on other grounds report-recommendation  by Lowe, M.J.) ("To create a dispute of material fact, it is not sufficient that the non-movant merely challenge the veracity or form of one or more of the movant's supporting affidavits"); *Medina v. Hunt*, 05-CV-1460, 2008 WL 4426748, at *11-12 (N.D.N.Y. Sept. 25, 2008) (Hurd, J. adopting report-recommendation by Lowe, M.J.) (deeming claims asserted in defendant's Rule 7.1 Statement admitted where plaintiff, among other things, "merely criticizes the form or veracity of Defendants' affidavit testimony rather than citing any admissible record evidence contradicting that testimony.").

material fact on a motion for summary judgment.  Exhibit O to Plaintiff's affidavit consists of a

one-page policy statement issued by DOCS, setting forth medical criteria that must be satisfied

by inmates requesting a lower bunk placement.  (Dkt. No. 48, Part 3, at 60.)  Such a policy

statement, which in no way denies the authority of Movement and Control staff to make the

ultimate decision regarding whether a prisoner shall receive a lower bunk placement (and which

does not even mention Nurse Administrators), is immaterial to whether Defendant Ryerson

possessed a duty to ensure lower bunk assignments for prisoners who demonstrate a medical

need for such assignments.  As a result, the first and fourth referenced facts are also deemed

admitted by Plaintiff.

Based on these four admissions, the Court finds that, even if the Court were to find that

some admissible record evidence exists that Defendant Ryerson had a supervisory role in

assisting qualified inmates in obtaining lower bunk assignments, the Court can find no

admissible record evidence that Defendant Ryerson, as a supervisor, was personally involved in

the constitutional violations alleged.  The Court notes that it can find no admissible record

evidence that, even if Correction Counselor Anderson was one of Defendant Ryerson's

"subordinates" in the medical department at Auburn Correctional Facility, Defendant Ryerson

was grossly negligent in managing her.  (*See* Dkt. No. 45, Part 10, ¶¶ 1 [Ryerson Aff., describing

whom she supervised at Auburn C.F.].)

For all these reasons, the Court dismisses Plaintiff's Eighth Amendment claim against

Defendant Ryerson for lack of personal involvement.  *See Harris v. Aidala*, 03-CV-0467, 2006

WL 2583256, at *4 (W.D.N.Y. Sept. 6, 2006) ("Inasmuch as Ficchi and Piccolo were not

personally involved with Harris' cell assignment, they cannot be held liable for that

determination"), *aff'd*, No. 06-4365, 2008 WL 833073 (2d Cir. March 25, 2008); *Mabery v.*

*Coughlin,* 93-CV-3221, 1996 WL 209998, at *7 (S.D.N.Y. Apr. 30, 1996) (rejecting plaintiff's claim "that defendants exhibited deliberate indifference to his medical needs by housing him in a dusty cell block which exacerbated his allergy condition [because] plaintiff has not shown that defendants were personally involved in his housing assignment . . ."); *Moolenaar v. Champagne,* 03-CV-1464, 2006 WL 2795339, at *6 (N.D.N.Y. Sept. 26, 2006) (Kahn, J.) (dismissing a claim against a nurse administrator that she "should have discerned both [an inmate's] medical condition and the need for a bunk permit" based on her supervisory position is without merit because "there is no *respondeat superior* liability under section 1983"); *cf. Bennett v. Hunter,* 02-CV-1365, 2006 WL 1174309, at n. 33 (N.D.N.Y. May 1, 2006) (Scullin, S.J. & Lowe, M.J.) (collecting cases).

> ### 2.    Whether Admissible Record Evidence Exists Establishing that Defendant Ryerson Was Deliberately Indifferent to Plaintiff's Serious Medical Need for a Bottom Bunk

In the alternative, even if the Court were to find that Defendant Ryerson was personally involved in the constitutional violation alleged, the Court can find no admissible record evidence from which a rational trier of fact could conclude that Defendant Ryerson's failure to fulfill her role in seeing that Plaintiff was assigned a bottom bunk was anything more than carelessness or negligence.

Negligently failing to cause a prisoner to be assigned to a lower bunk does not satisfy the subjective element of the legal standard governing claims of deliberate indifference to a serious medical need under the Eighth Amendment.  *See Goodson v. Willard Drug Treatment Campus,* 615 F. Supp.2d 100, 102 (W.D.N.Y. 2009) ("[E]ven if there were sufficient evidence upon which a factfinder could reasonably conclude that defendants were negligent in assigning plaintiff to a top bunk (and I do not believe that there is), that too would be insufficient."); *Faison v. Janicki,*

16

03-CV-0647, 2007 WL 529310, at *2-3 (W.D.N.Y. Feb. 14, 2007) ("[E]ven assuming that Dr.

Barranos's rescission of plaintiff's bottom-bunk permit amounted to a serious deprivation of his

constitutional rights-which is doubtful-there is no evidence that Dr. Barranos acted with a

culpable state of mind [where the plaintiff admitted in his deposition that the basis of his claim

against Dr. Barranos was 'medical negligence'].");  *Connors v. Heywright*, 02-CV-9988, 2003 WL

21087886, at *3 (S.D.N.Y. May 12, 2003) (dismissing prisoner's claim that defendants were

"negligent to [his] medical needs" in that they, *inter alia*, placed him in a top bunk despite the

fact that he had a "mandatory lower bunk slip").[10]

 This is because "deliberate indifference describes a state of mind more blameworthy than

negligence."  *Cusamano v. Sobek*, 604 F. Supp.2d 416, 494, n.176 (N.D.N.Y. 2009) (Suddaby, J.,

adopting Report-Recommendation of Lowe, M.J.) (collecting cases).  "Rather, deliberate

indifference is a state of mind akin to criminal recklessness."  *Cusamano*, 604 F. Supp.2d at 494,

n.177 (collecting cases).

 For this alternative reason, the Court finds that Defendant Ryerson cannot be held liable

for Plaintiff's injuries, and the Court grants Defendants' motion for summary judgment with

regard to Plaintiff's claim against Defendant Ryerson.

### B. Plaintiff's Claim Against Defendant Bellnier

The specific grounds in support of Magistrate Judge Homer's recommendation that the

---

[10] *See also Burley v. Upton*, 257 F. App'x. 207, 210 (11th Cir. 2007) ("Even if
Burley did have a 'serious medical need,' he failed to show that officials were anything more
than negligent by keeping him in a top bunk for five days."); *cf. Rivera v. McKenna*, 02-CV-
0244, 2004 WL 231396, at *2 (D. Conn. Feb. 5, 2004) ("The plaintiff does not allege that
Warden Murphy intentionally failed to provide a means of climbing down from the top bunk or
up from the bottom bunk or that he made the warden aware of the lack of a ladder in his cell
prior to his fall. The allegations set forth, at most, a state law negligence claim.").

Court deny Defendants' motion with regard to Plaintiff's claim against Defendant Bellnier are as follows: (1) there is a question of fact regarding whether Defendant Bellnier's failure to ensure that the appropriate correctional facility departments were contacted for input regarding double-celling constitutes gross negligence indicative of deliberate indifference; and (2) there is a question of fact regarding whether Defendant Bellnier's failure to ensure that his subordinate's work was accurate constitutes gross negligence indicative of deliberate indifference.  (Dkt. No. 52, at 16.)

In support of the both referenced questions of fact, Magistrate Judge Homer relies on Defendant Bellnier's sworn assertions (in an affidavit submitted in support of Defendants' motion for summary judgment) that (1) he is responsible for approving double-celling orders, (2) he delegated responsibility for investigating and preparing the double-celling orders to a subordinate who generally did "a complete and thorough job . . . " (i.e., Correction Counselor Lynn Anderson), and (3) the sheer volume of papers ("hundreds of pieces of paper") he signed each week made it impossible to "personally" and thoroughly review the contents of each of the forms before approving them.  (*Id*. at 15 [citing Bellnier Affirm, at ¶¶ 15-18, attached at Dkt. No. 45, Part 3, at 3-4, and Exh. B to Ryerson Aff., attached at Dkt. No. 45, Part 12, at 2].)  In addition, Magistrate Judge Homer relies on Plaintiff's Double-Cell Information Sheet, which was signed by Defendant Bellnier, despite the fact that the medical unit failed to complete the "Health Services Review Results" section.  (*Id*.)

In their Objections, Defendants offer six arguments in response to Magistrate Judge Homer's recommendation regarding Defendant Bellnier.  (Dkt. No. 53, Part 1, at 7-10.)  First, argue Defendants, Defendant Bellnier conceded only that he *once* inadvertently signed a Double-Cell Information Sheet (the "Sheet") without noticing that one of the sections had not

18

been filled out.  (*Id*. at 7-8.)  Second, argue Defendants, Defendant Bellnier "knew Anderson to

do a complete and thorough job in completing the Sheets."  (*Id*. at 7-8.)  Third, argue

Defendants, Defendant Bellnier's failure to notice that the "Health Services Review Results"

section of Plaintiff's Sheet was an oversight, and Plaintiff makes no allegations that any other

Sheets were in any way improperly filled out or improperly approved at any point.  (*Id*. at 8.)

Fourth, argue Defendants, whether Defendant Bellnier has made similar omissions with respect

to other inmates is not relevant, because all that is relevant for purposes of this action is whether

Defendant Bellnier repeatedly took such actions with respect to Plaintiff.  (*Id*. at 8.)  Fifth, argue

Defendants, Defendant Bellnier did not have reason to know of facts creating a high degree of

risk of physical harm to Plaintiff and did not deliberately fail to act in conscious disregard of or

indifference to that risk.  (*Id*. at 9-10.)  Sixth, argue Defendants, by signing Plaintiff's Sheet, all

Defendant Bellnier did was approve Plaintiff for double-celling; he did not direct Plaintiff's

placement into a top bunk, as such decisions are made by Movement and Control staff.  (*Id*. at

10.)

　　　　"Personal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983."  *Excell v. Woods*, 07-CV-0305, 2009 WL

3124424, at *20 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.) [citations and internal quotation marks

omitted].  "In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual,

a plaintiff must show some tangible connection between the alleged unlawful conduct and the

defendant."  *Excell*, 2009 WL 3124424, at *20 [citation omitted].  "If the defendant is a

supervisory official, such as a [deputy superintendent of a prison], a mere 'linkage' to the

unlawful conduct through 'the prison chain of command' (i.e., under the doctrine of *respondeat*

*superior*) is insufficient to show his or her personal involvement in that unlawful conduct."  *Id*.

[citations omitted].  "In other words, supervisory officials may not be held liable merely because they held a position of authority."  *Id*. [citation omitted].  "Rather, supervisory personnel may be considered 'personally involved' only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring."  *Id*. [citations omitted].

Here, Plaintiff argues that Defendants Brown, Graham, and Ryerson all engaged in a "gross omission in supervision[,]" which led to his fall from an upper bunk.  (Dkt. No. 48, Part 2 at 8-16.)  Plaintiff further argues that "Defendants Brown, Graham, Ryerson and Bellnier created and governed the policy and procedures used to unlawfully place [him] in a top-bunk and allowed such created policy to continue[,] which resulted in the serious permanent injury to [him]."  (*Id*. at 12.)

More specifically, with regard to Defendant Bellnier, Plaintiff does not argue that he either directly participated in the action, failed to remedy a wrong after learning of the violation, or exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.  (*Id*. at 8-21.)  Instead, Plaintiff argues that Defendant Bellnier (1) created or allowed the policy or custom under which the incident occurred (i.e., the policy of not reviewing  the content of the forms submitted by Correction Counselor Lynn Anderson before approving them), and (2) was grossly negligent in managing subordinates who caused the incident (i.e., by repeatedly failing to review the content of the forms submitted by Correction Counselor Anderson before approving them).  (*Id*.)

20

### 1.      Policy or Custom

As explained above in Part III.B. of this Decision and Order, under the third prong for supervisory negligence, supervisors may be found liable if they created or allowed the policy or custom under which the incident occurred.  "A policy or custom may be inferred from acts or omissions of supervisory officials serious enough to amount to gross negligence or deliberate indifference to the constitutional rights of the plaintiff." *Eng v. Coughlin*, 684 F. Supp. 56, 65 (S.D.N.Y.1988); *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) ("[D]eliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate . . . .").

Generally, a single incident involving an employee below the policymaking level will not suffice to support an inference of an official custom or policy, absent evidence tending to support, at least circumstantially, such an inference.  *Cf. Davis v. County of Nassau*, 355 F. Supp.2d 668, 678 (E.D.N.Y. 2005) (applying rule in context of municipal customs or policies) [internal quotation marks and citations omitted]; *see also Barad v. Comstock*, 03-CV-0736, 2004 WL 1573999, at *3 (W.D.N.Y. June 4, 2004) (dismissing supervisory liability claim against DOCS Commissioner Glenn Goord because plaintiff "failed to state (1) the manner in which the supervisory staff at GCF were improperly trained, (2) how Goord allegedly knew of the past instances of misconduct, (3) assuming awareness of the past conduct, how such awareness posed an unreasonable risk to plaintiff, (4) that Goord somehow knew of plaintiff's medical condition or (5) facts which could support a showing of 'grossly negligent' conduct.").

Here, there is record evidence that, due to fact that Defendant Bellnier had to sign hundreds of pieces of paper each week, he did not thoroughly review the contents of each of the forms submitted by Correction Counselor Anderson before approving them.  (Dkt. No. 45, Part

3, at 3-4, ¶¶ 15-17, 20 [Bellnier Affirm.].)  In arguing that no record evidence exists that Defendant Bellnier's custom ever before impacted an inmate the way it impacted Plaintiff, Defendants attempt to insert an injury element into the custom at issue, narrowly defining the "custom" so that it has not been shown to be a custom at all.  The Court is not persuaded that the custom in question can be so narrowly defined.  Rather, the Court finds that Defendant Bellnier's "custom," for purposes of the supervisory liability standard, was merely one of incompletely reviewing the contents of the forms presented to him by Correction Counselor Anderson.  That is the custom under which the incident in question occurred.

For these reasons, the Court denies Defendants' motion for summary judgment to the extent that it seeks the dismissal of Plaintiff's claim against Defendant Bellnier.

### 2.     Gross Negligence in Managing Subordinate

In the interest of thoroughness, the Court will analyze Plaintiff's alternative asserted ground for supervisory liability.  Under the fourth prong for supervisory negligence, supervisors may be found liable if they were grossly negligent in managing a subordinate who caused the incident.  *Thompson,* 2001 WL 636432, at *7.  Gross negligence has been defined as "an indifference to present legal duty and utter forgetfulness of legal obligations."  *Doe v. New York City Dep't of Soc. Servs*., 649 F.2d 134, 143 n.4 (2d Cir. 1981).[11]  Thus, defendants are grossly negligent when they "[have] reason to know of facts creating a high degree of risk of physical harm to another and deliberately [act] or [fail] to act in conscious disregard or indifference to that risk."  *Poe v. Leonard*, 282 F.3d 123, 140 n.14 (2d Cir. 2002).

---

[11]     As stated in Part III.A. of this Decision and Order, ordinary negligence itself cannot establish a cause of action under §1983.  However, "repeated acts of negligence can be evidence of indifference."  *Tylena M. v. Heartshare Children's Servs*., 390 F. Supp.2d 296, 306 (S.D.N.Y. 2005).

Having said that, "[s]upervisors cannot be expected to reinvent the wheel with every decision, for that is administratively unfeasible; rather, they are entitled to rely upon the decisions of their predecessors or subordinates so long as those decisions do not appear to be obviously invalid, illegal or otherwise inadequate." *Poe v. Leonard*, 282 F.3d 123, 144 (2d Cir. 2002); *see also Martinez v. Simonetti*, 202 F.3d 625, 635 (2d Cir. 2000) (finding that it was erroneous for the trial court to conclude that police supervisors had a duty to conduct an independent investigation before charging a suspect).

In *Poe v. Leonard*, the plaintiff sued a trooper with the Connecticut State Police ("CSP"), for videotaping her undressing at the CSP Training Center after asking her to appear in a training video. *Poe*, 282 F.3d at 125. Plaintiff also sued a captain, the trooper's former supervisor, alleging that he "violated her rights by his gross negligence or deliberate indifference in failing to adequately train, supervise, and discipline [the trooper]." *Id*. The Second Circuit concluded that the captain was "entitled to qualified immunity because the evidence that [plaintiff] asserts should have put [the captain] on notice that he needed to supervise [the trooper] more closely is insufficient as a matter of law to demonstrate that [the captain] is liable as [the trooper's] supervisor under clearly established law." *Id*. at 125. The Second Circuit based its conclusion on its finding that "[t]he facts [plaintiff] alleges are insufficient as a matter of law to have put a reasonable supervisor on notice that there was a high risk that one of his subordinates would violate another's constitutional rights." *Id*. at 145.[12]

---

[12]     *Cf. Perdue v. Dreyer*, 03-CV-0770, 2008 WL 4826260, at *5 (W.D.N.Y. Nov. 5, 2008) (denying defendants' motion for summary judgment with regard to plaintiff's Eighth Amendment deliberate indifference claim arising out of defendants' failure to provide plaintiff with a bottom bunk despite plaintiff possessing a permanent medical permit for a lower bunk because there were questions of fact regarding whether (1) plaintiff "informed each of the corrections officers named as defendants in this action of his medical history of seizures and

23

Here, unlike in *Poe v. Leonard*, the Court finds that the record contains admissible record evidence from which a rational fact finder could conclude that a reasonable supervisor would have been put on notice that there was a high risk that Plaintiff's constitutional rights would be violated, based on Correction Counselor's failure to ensure that Plaintiff's Double-Cell Information Sheet was complete. More specifically, on its face, even a cursory review of the Sheet reveals that the "Health Services Review Results" section was not completed. (Dkt. No. 45, Part 12, at 2.)[13] From this evidence, a rational fact finder could conclude that Defendant Bellnier knew and/or should have known (1) that Correction Counselor Anderson (his subordinate) failed to ensure that the Sheet was complete, and (2) that, because certain inmates approved for double-celling may need to be restricted to a bottom bunk for medical reasons, the failure to complete the form could result in Plaintiff suffering a constitutional violation.[14]

For this alternative reason, the Court denies Defendants' motion for summary judgment to the extent that it seeks the dismissal of Plaintiff's claim against Defendant Bellnier.

## C.    Remainder of Plaintiff's Claims

---

showed them his medical permit for a lower bunk," and (2) "plaintiff's health care provider informed C.O. Dreyer that plaintiff was in danger of suffering a seizure and 'requested him to be moved'"); *Thomas v. New York City*, 814 F. Supp. 1139, 1151 (E.D.N.Y. 1993) (holding that a supervisor's knowledge of improper conduct "may be inferred from a persistent violation of a statutory duty to inquire about the unconstitutional behavior of their subordinates and a failure to prevent the unconstitutional acts").

[13]    Moreover, as stated above Part III.B.1. of this Decision and Order, there is record evidence that Defendant Bellnier did not *thoroughly review* the contents of each of the forms submitted by Correction Counselor Anderson before approving them. (Dkt. No. 45, Part 3, at 3-4, ¶¶ 15-17, 20 [Bellnier Affirm.].)

[14]    *Cf. Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir. 1979) (single "brutal and premeditated" beating of inmate by group of county jail guards of varying ranks, one of whom admitted to using "show of force" to control disobedient inmates, warrants inferring policy of inadequate training or supervision).

Neither Defendants nor Plaintiff made any specific challenge to the remainder of Magistrate Judge Homer's Report-Recommendation, which recommended that the remainder of Plaintiff's Complaint be dismissed.  As a result, those portions of the Report-Recommendation are subject to only clear-error review, as explained above in Part II.A. of this Decision and Order.

After carefully reviewing all of the papers in this action, including Magistrate Judge Homer's Report-Recommendation, the Court concludes that the referenced portions of the Report-Recommendation are correct and not clearly erroneous.   As a result, the referenced portions of the Report-Recommendation are accepted and adopted; Defendants' motion is granted with regard to Plaintiff's claims against Defendants Graham and Brown; and those claims are dismissed.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Homer's Report-Recommendation is **ACCEPTED** and **ADOPTED as modified above**; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 45) is **GRANTED** with regard to Plaintiff's claims against Defendants Graham, Brown, and Ryerson. The clerk is directed to terminate these defendants;  and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 45) is **DENIED** with regard to Plaintiff's claims against Defendant Bellnier.

Dated: October 23, 2009
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

25